## THE STATE *v.* ROBERT WILBURN.

CRIMINAL LAW. *Carrying pistol.* The act of 1871, ch. 90, prohibiting the carrying of an army pistol, except openly in the hand, is constitutional, and does not infringe the right of the citizen to keep and bear arms for the common defense, and the indictment in this case sufficiently charges the offense.

Cases cited: Page *v.* State, 3 Heis., 198; Andrews *v.* State, 3 Heis., 165.

### FROM WILSON.

Appeal from the Circuit Court. WM. H. WILLIAMSON, Judge.

---

---

ATTORNEY-GENERAL HEISKELL for the State.

No brief for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

Wilburn was indicted in the Circuit Court of Wilson county for carrying weapons contrary to law.

. The first count charges him with carrying a belt and pocket pistol and revolver pistol, the same being an arm such as is not commonly carried and used in the United States army.

The second count charges that he "did unlawfully and wilfully carry an army pistol privately and concealed, and not openly in his hands," etc.

On motion, the second count was quashed.

A trial was had on the first count, and defendant was acquitted.

The State appealed from the judgment quashing the second count.

The record furnishes us no information as to the ground on which the second count was quashed, nor have we been furnished by the counsel for defendant with any argument in support of the action of the court. We presume, however, that the Circuit Judge must either have held that the offense charged is not indicated, or that it is not sufficiently described under the law.

By sec. 26 of the Declaration of Rights, art. 1 of the Constitution of 1870, "the citizens of this State have a right to keep and bear arms for their common defense; but the Legislature shall have power,

The State *v.* Wilburn.

by law, to regulate the wearing of arms, with a view to prevent crime."

The first act passed after the adoption of the Constitution of 1870, was as follows: "It shall not be lawful for any person to publicly or privately carry a dirk, sword cane, Spanish stiletto, belt or pocket pistol, or revolver." But this act was not to apply to an officer or policeman engaged in his official duties, or to any person *bona fide* aiding an officer, or to any person on a journey out of his county or State. It is observed that the prohibition is against the carrying, publicly or privately, the weapons enumerated. In conferring the power to "regulate," etc., the words employed in the Constitution are "wearing of arms." It was held by this court, in the case of *Page* v. *The State,* 3 Heis., 198, that the Legislature used the word carry, in this act, as synonymous with the word "wear," as applied to arms; and that the expressions "wearing arms," "carrying arms" and "going armed" had the same meaning. Hence, that a person was indicted for carrying a pistol, not an army weapon, along the road in his hand, if his intent in so carrying was that of "going armed." The power of the Legislature to make the carrying of weapons not adapted to the common defense, unlawful, admits of no controversy. This power existed before as well as since the adoption of the Constitution of 1870. None of the weapons enumerated in the act of 1870 fall under the denomination of arms for the common defense, except it may be the "revolver." This term is sometimes applied to a pistol not recognized as an

army weapon, and sometimes to the well-known army weapon usually called a "repeater." Hence this court, in the case of *Andrews* v. *The State*, 3 Heis., 165, held that the carrying of all the weapons enumerated in the act of 1870, was constitutionally declared .unlawful by that act, including the revolver. When it should appear by the proof that it was properly an army weapon, then it was held that the prohibition of the statute was too broad; as, in effect, it is an absolute prohibition against keeping such a weapon, and not a regulation of the use of it. In this re-spect, the act was regarded as violating the constitutional right to keep arms. But the court further held that the Legislature might, "by a proper law, regulate the carrying of this weapon publicly and abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence." It was not intended by this declaration to hold that the power of the Legislature was restricted to the enactment of proper laws for "carrying this weapon publicly or abroad." On the contrary, it is fairly to be inferred from the reasoning in the opinion, that the power of the Legislature to regulate the carrying or wearing of the army pistol, privately or publicly, was conceded, except that a doubt was indicated as to whether the Legislature could constitutionally prohibit such wearing or carrying of this weapon, when it was clearly shown it was worn *bona fide* to ward off or meet imminent and threatened danger to life or limb, or great bodily harm. But this question was

not decided, but reserved until it should properly arise.

After the decisions of the cases of *Andrews* v. *The State* and *Page* v. *The State,* before referred to, the Legislature passed the act of 1871, ch. 90, under which the defendant in the present case was indicted. The title of the act is, "to preserve the peace and to prevent homicide." It enacts, "that it shall not be lawful for any person to publicly or privately carry a dirk, sword-cane, Spanish stiletto, belt or pocket pistol, or revolver, other than an army pistol, or such as are commonly carried and used in the United States army, and in no case shall it be lawful for any person to carry such army pistol publicly or privately about his person in any other manner than openly in his hands," etc. The same exceptions as to officers, policemen, and persons on a journey, are then made, as in the act of 1870.

It is observed that the acts of 1870 and of 1871 are the same, so far as the prohibition of carrying the weapons enumerated, and so far as the exceptions in favor of officers and travelers, are concerned; but the difference in the provision as to the carrying of the army pistol was, therefore, manifestly intended to remedy the defect held to exist in the act of 1870, by the decision of this court. In other words, it was intended to regulate the wearing of the army pistol, by prohibiting its wearing or carrying publicly or privately about the person, in any other manner than openly in the hands. It was not an absolute prohibition of the carrying or wearing of this weapon,

as it recognizes the right to carry it openly in the hands, and it concedes to public officers and travelers the right to carry or wear the army pistol, or any of the other weapons enumerated in the act, under the circumstances specified in the act.

We are not called upon, in the present case, to determine what the Legislature meant by the "carrying of the army pistol openly in the hands," or why such an exception was made. The only questions now before us are, first, whether the act of 1871, prohibiting the carrying of an army pistol about the person publicly or privately, is authorized by the clause in the Constitution which empowers the Legislature, by law, to regulate the wearing of arms, with a view to prevent crime. As already indicated, we have no doubt on this question, and hold the act to be clearly constitutional. The Constitution of 1834 contained only the provision securing to the citizen "the right to keep or bear arms for the common defense." The additional clause in the Constitution of 1870 was adopted to remove all doubt as to the power of the Legislature to regulate the use of the arms which the citizens had a right to keep. It was not intended that the keeping or using of such arms should be prohibited, but that the use thereof by wearing or carrying about the person might be so regulated by law as to prevent crime. It was crime resulting from the habit of wearing arms, or of going armed, which the Convention sought to prevent, by expressly conferring this power of the Legislature. The Legislature has deemed it a proper prevention of

crime to regulate the use of this arm by prohibiting the wearing of it or carrying it about the person, privately or publicly, unless it be carried openly in the hands, or unless it be worn or carried by an officer or policeman engaged in his duties, or by a traveler on a journey. This was a legitimate exercise of the power to regulate the wearing of the weapon, and is authorized by the Constitution, and does not interfere with the right of keeping the arm, or of bearing it for the common defense.

The second question is, whether the offense, under this act, is sufficiently described in the indictment to warrant a conviction. The charge in the indictment is, that the defendant "unlawfully and wilfully did carry an army pistol privately and concealed and not openly in his hands." The offense described in the act is that of carrying an army pistol publicly or privately about his person in any other manner than openly in his hands. It thus appears that the words "about his person" are omitted in the indictment. It is not easy to conceive of a plausible excuse for the omission of these words by the draftsman of the indictment, but we are of opinion that it is not fatal to its sufficiency. It is made our duty by the 4th section of the act of 1870, which is not repealed by the act of 1871, to give to this act a liberal construction so as to carry out its true intent and meaning. We held in the case of *Page* v. *The State*, 3 Heis., 200, that in the statute of 1870, which, as to the use of the word "carry," is the same as the statute of 1871, the Legislature used the word "carry"

---

in the sense of "wear." Such is the sense of the word in the statute of 1871, and the meaning of the Legislature was, that the wearing of an army pistol privately was unlawful, which is equivalent in meaning to the carrying of such pistol privately and concealed about the person. We are therefore of opinion that the offense is charged with sufficient certainty in the indictment to authorize a conviction if the same should be sustained by proof on a trial.

The judgment is reversed and the cause remanded.